**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 23-cv-20439

MICHAEL NORRIS, *et al.*,

      Plaintiffs,

v.

THOMAS BRADY, *et al.*,

      Defendants.

_____/

**<u>DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND</u>**
**<u>REQUEST FOR HEARING</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................4

I.  DEFENDANTS' REMOVAL WAS TIMELY ....................................................................4

II.  THE COURT HAS JURISDICTION UNDER 28 U.S.C. § 1331 ....................................6

    A.  Plaintiffs' Count Four Necessarily Raises A Federal Question..............................6
    B.  The Remaining *Grable* Factors Likewise Favor Jurisdiction ..............................10

III.  THE COURT HAS JURISDICTION UNDER 28 U.S.C. § 1334, AND THERE
    IS NO BASIS FOR MANDATORY ABSTENTION .....................................................11

    A.  The FTX Debtors Have A Vested Contractual Obligation To Indemnify
       And Defend Claims Arising Under This Action.....................................................12
    B.  Plaintiffs' Claims Are "Inextricably Intertwined" With The Conduct And
       Operations Of The FTX Debtors ...........................................................................13
    C.  Existence Of Shared Insurance Further Impacts The FTX Debtors' Estates.........15
    D.  This Court Should Hear This Action—Abstention Is Not Mandatory .................16
       1.  Complexity of the Federal Issues Raised Weigh Against
          Abstention...................................................................................................17
       2.  Status of Proceeding in State Court Weighs Against Abstention ..............17
       3.  Backlog and Time to Resolution Weigh Against Abstention ....................18

IV.  THE COURT SHOULD EXERCISE ITS DISCRETION TO STAY THIS
    ACTION .........................................................................................................................19

CONCLUSION.....................................................................................................................20

REQUEST FOR HEARING.................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adventure Outdoors Inc. v. Bloomberg*,
    552 F.3d 1290 (11th Cir. 2008) ...................................................................6, 10, 11

*In re Antol Restoration, Inc.*,
    444 B.R. 481 (Bankr. S.D. Fla. 2011)......................................................................16

*Bailey v. Janssen Pharma. Inc.*,
    536 F.3d 1202 (11th Cir. 2008) ................................................................................5

*Behlen v. Merrill Lynch*,
    311 F.3d 1087 (11th Cir. 2002) ..............................................................................11

*Burgess v. Universal City Dev. Partners, Ltd.*,
    No. 6:19-cv-2156-Orl-78LRH, 2020 WL 7251382 (M.D. Fla. Apr. 30, 2020) .....................20

*Cadle v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ...................................................................................20

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)..................................................................................................12

*CIC Contrutora, Inc v. Beccari*,
    No. 18-60621, 2018 WL 4409854 (S.D. Fla. July 20, 2018)....................................5

*City of Chicago v. Int'l Coll. of Surgeons*,
    522 U.S. 156 (1997)....................................................................................................6

*Coal. for Safe Transit Inc. v. Bi-State Dev. Agency*,
    778 F. Supp. 464 (E.D. Mo. 1991)............................................................................8

*D'Alessio v. N.Y. Stock Exch.*,
    258 F.3d 93 (2d Cir. 2001)......................................................................................11

*DeRoy v. Carnival Corp.*,
    963 F.3d 1302 (11th Cir. 2020) ................................................................................8

*In re Dow Corning Corp.*,
    86 F.3d 482 (6th Cir. 1996) ....................................................................................15

*Edwards v. Apple Comput. Inc.*,
    645 F. App'x 849 (11th Cir. 2016) ...........................................................................5

iii

*Edwards v. Deloitte & Touche, LLP*,
  No. 16-21221, 2017 WL 1291994 (S.D. Fla. Jan. 18, 2017)....................................................11

*In re EZ Pay Servs., Inc.*,
  390 B.R. 421 (Bankr. M.D. Fla. 2007) ...................................................................................17

*In re Fisher Island Invs., Inc.*,
  No. 11-17047-AJC, 2014 WL 1343269 (Bankr. S.D. Fla. Mar. 28, 2014) ...........................16

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
  463 U.S. 1 (1983).....................................................................................................................6

*Friedlander v. Troutman, Sanders, Lockerman & Ashmore*,
  788 F.2d 1500 (11th Cir. 1986) .............................................................................................11

*In re FTX Collapse Litig.*,
  MDL No. 3076 (J.P.M.L. Feb. 10, 2023) ................................................................................1

*In re FTX Trading Ltd.*,
  No. 22-11068 (Bankr. D. Del.) ................................................................................................3

*Garrison v. Bankman-Fried*,
  No 1:22-cv-23753-KMM (S.D. Fla.)........................................................................................4

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)............................................................................................................6, 11

*Greene v. H&R Block E. Enters., Inc.*,
  727 F. Supp. 2d 1363 (S.D. Fla. 2010) ..................................................................................20

*Gunn v. Minton*,
  568 U.S. 251 (2013)............................................................................................................6, 10

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
  535 U.S. 826 (2002)..................................................................................................................8

*Household Bank v. JFS Grp.*,
  320 F.3d 1249 (11th Cir. 2003) ...............................................................................................8

*Int'l Union of Op. Eng'rs Loc. 542 v. Mallinckrodt ARD, Inc.*,
  No. 21-cv-114, 2021 WL 915722 (E.D. Pa. Mar. 10, 2021) .................................................14

*Kernel Recs. Oy v. Mosley*,
  No. 09-21597, 2010 WL 2812565 (S.D. Fla. July 5, 2010)...................................................15

*Lead I JV, LP v. N. Fork Bank*,
  401 B.R. 571 (E.D.N.Y. 2009) .................................................................................................6

*Ledford v. Peeples*,
  657 F.3d 1222 (11th Cir. 2011) (en banc) ............................................................7

*Legg v. Wyeth*,
  428 F.3d 1317 (11th Cir. 2005) .........................................................................19

*Matter of Lemco Gypsum, Inc.*,
  910 F.2d 784 (11th Cir. 1990) ...........................................................................12

*In re LTC Holdings, Inc.*,
  587 B.R. 25 (Bankr. D. Del. 2018) ...................................................................13

*Marietta Drapery & Window Coverings Co. v. N. River Ins.*,
  486 F. Supp. 2d 1366 (N.D. Ga. 2007) .............................................................21

*McDougald v. Jenson*,
  786 F.2d 1465 (11th Cir. 1986) ...........................................................................7

*MDS (Can.) Inc. v. Rad Source Techs.*,
  720 F.3d 833 (11th Cir. 2013) ...........................................................................10

*Mehl v. Office of Financial Regulation*,
  859 So. 2d 1260 (Fla. 1st DCA 2003) ...............................................................10

*Merrill Lynch, Pierce, Fenner & Smith Inc. v Manning*,
  772 F.3d 158 (3d Cir. 2014), *aff'd*, 578 U.S. 374 (2016) ...............................10

*Meyer v. Health Mgmt. Assocs.*,
  841 F. Supp. 2d 1262 (S.D. Fla. 2012) .............................................................10

*In re Millennium Lab Holdings II, LLC*,
  591 B.R. 559 (D. Del. 2018) .............................................................................13

*In re Montreal Maine & Atl. Ry., Ltd.*,
  No. 1:13-MC-00184-NT, 2014 WL 1155419 (D. Me. Mar. 21, 2014) ...............16

*Mun. Gas Auth. v. Town of Smyrna*,
  No. 1:11-cv-2476-JEC, 2012 WL 1038649 (N.D. Ga. Mar. 27, 2012) ..............21

*Murphy Brothers v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999) ............................................................................................5

*OPKO Health, Inc. v. Lipsius*,
  279 So. 3d 787 (Fla. 3d DCA 2019) ..................................................................18

*In re Quigley Co., Inc.*,
  676 F.3d 45 (2d Cir. 2012) ................................................................................16

v

*Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*,
    277 B.R. 5 (S.D.N.Y. 2002) ...................................................19

*Roche v. Cyrulnik*,
    337 So. 3d 86 (Fla. 3d DCA 2021) ...................................................18

*Roman v. Hooters Spring Hill, Inc.*,
    No. 8:16-cv-01332, 2016 WL 8997452 (M.D. Fla. July 8, 2016) ...........................9

*Sanchez v. Rincon Progreseño Corp.*,
    447 F. Supp. 3d 1290 (S.D. Fla. 2020) ...................................................9, 19

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ...................................................20

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ...................................................7

*Stern v. First Liberty Ins. Corp.*,
    424 F. Supp. 3d 1264 (S.D. Fla. 2020) ...................................................7, 17

*Strobel v. Colgate-Palmolive Co.*,
    No. 2:19-cv-00767-MCE-KJN, 2019 WL 2710668 (E.D. Cal. June 28, 2019) ...................13

*Suarez v. Muscletech Rsch. & Dev., Inc.*,
    No. 06-cv-20981, 2006 WL 8433564 (S.D. Fla. May 26, 2006) ...........................13

*In re Toledo*,
    170 F.3d 1340 (11th Cir. 1999) ...................................................12

*Turbeville v. FINRA*,
    874 F.3d 1268 (11th Cir. 2017) ...................................................9

*Matter of Wood*,
    825 F.2d 90 (5th Cir. 1987) ...................................................14

*Young v. Roy's Rest.*,
    No. 6:06-cv-178-Orl-19JGG, 2006 WL 2024946 (M.D. Fla. July 17, 2006) ...................11

## STATUTES

15 U.S.C.
    § 78aa(a) ...................................................11
    § 78j(b) ...................................................2, 6, 7, 11

28 U.S.C.
    § 1331 ........................................................................................................ 2, 6, 17
    § 1334 ............................................................................................... 2, 11, 14, 17
    § 1334(c)(2) ........................................................................................................ 16
    § 1367 .................................................................................................................. 6
    § 1441(c)(1) .......................................................................................................... 6
    § 1446(b)(1) .......................................................................................................... 5
    § 1447(c) ............................................................................................................. 19

U.S. Code Title 11 Chapter 11 .............................................................................. 3, 16

## RULES

Fed. R. Bankr. P. 9027 ................................................................................... 5, 12, 13

Fed. R. Civ. P. Rule 26(d)(1) ................................................................................... 18

Fla. R. Civ. P.
    1.070(i)(5) ............................................................................................................ 5
    1.340(a) .............................................................................................................. 18
    1.350(b) .............................................................................................................. 18
    1.370(a) .............................................................................................................. 18

## TREATISES

10B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2767 (4th ed.
    2022) ................................................................................................................ 6, 7

## OTHER AUTHORITIES

Federal Court Management Statistics, September 2022: Comparison of Districts Within the
    Eleventh Circuit – 12 Month Period Ending September 30, 2022, https://www.uscourts.gov/
    sites/default/files/data_tables/fcms_na_distcomparison0930.2022.pdf .................................. 19

Off. of State Ct. Adm'r, Fla. Cts., *Statistical Reference Guide to Florida's Trial Courts (2023)*,
    https://www.flcourts.gov/content/download/858890/file/2021-22-srg-chapter-2-
    overallstatistics-20230127.pdf ................................................................................... 19

## INTRODUCTION

Plaintiffs filed this duplicative action in state court—even though it is identical to Plaintiffs' counsel's first-filed federal class action, *Garrison v. Bankman-Fried*, and even though it raises federal questions of law—to shop for a different forum to resolve threshold legal issues applicable to *Garrison*. Now, seeking to remand this action to state court, Plaintiffs argue that this case concerns only questions of state law and that the mention of adjudicating issues of federal securities registration with the SEC in the Amended Complaint is "no more than a simple scrivener's error." Pls.' Mot. to Remand ("Mot.") at 10, ECF No. 22. But Plaintiffs were their own scrivener, and over and over the Amended Complaint seeks declarations of federal law to resolve "global" litigation related to FTX. In fact, Plaintiffs admit that they filed this duplicative action in state court because they believe the state court can issue declaratory rulings on federal law more quickly than this Court. Yet four days after they filed this Remand Motion, Plaintiffs moved before the Judicial Panel for Multidistrict Litigation, seeking to transfer cases filed in California against different defendants and raising different claims, and proposing that another judge of this Court preside over a multidistrict litigation—including this action, which they contend should be remanded—and issue the same declaratory rulings.[1]

Plaintiffs' procedural maneuvers multiply litigation for no legitimate reason. More important, their unfounded view of how efficiently this Court will resolve their claims (and their preference for a particular state court judge) provides no grounds for returning this action to state court. Plaintiffs cannot contest that they seek a declaration of federal law, nor can they refute the impact this litigation would have on assets of the bankrupt FTX entities' estates.

---

[1] *See* Pet'rs' Mot. for Transfer of Related Actions to S.D. Fla., *In re FTX Collapse Litig.*, MDL No. 3076 (J.P.M.L. Feb. 10, 2023), ECF No. 1 (attached without exhibits as Ex. A).

Plaintiffs' Motion should be denied for four reasons. **First**, removal is timely because Defendants removed the action within 30 days of waiving service. The Supreme Court specifically rejected Plaintiffs' argument to the contrary a quarter-century ago. **Second**, this Court has "arising under" jurisdiction under 28 U.S.C. § 1331, because Plaintiffs' request for a declaratory judgment presents a question of federal law that is plainly disputed and substantial—indeed, it is the entire reason for Plaintiffs' duplicative Amended Complaint. Plaintiffs allege that they relied on Defendants' alleged misrepresentations to purchase interest-bearing cryptocurrency accounts, which they ask this Court to find are securities under federal law. The federal question is necessarily raised, and Plaintiffs could have brought their claim directly in federal court under Section 10(b) of the Exchange Act of 1934. **Third**, and independently, this Court has "related to" jurisdiction under 28 U.S.C. § 1334, because Defendants' entitlement to indemnification and, at least for Defendant Brady, insurance proceeds from FTX entities renders this action related to the FTX bankruptcy proceedings. Moreover, Plaintiffs cannot establish that mandatory abstention applies. **Finally**, as a point of procedure, to the extent Plaintiffs' Remand Motion raises complex questions of jurisdiction, the Court has discretion to stay this action in favor of the first-filed putative class action pending in this Court, *Garrison v. Bankman-Fried*, before reaching the merits of the Plaintiffs' Remand Motion.

## BACKGROUND

Plaintiffs seek to hold Defendants—outsider celebrities—responsible for losses resulting from the collapse of the FTX cryptocurrency exchange. They allege that "[t]he FTX group of companies," including FTX Trading Ltd. d/b/a FTX and West Realm Shire Services Inc. d/b/a FTX US ("FTX") launched a nationwide advertising campaign as part of a fraudulent scheme to promote FTX's cryptocurrency exchange. *See* Am. Compl. ("AC") ¶¶ 21, 41, 59, ECF No. 1-2. As part of that effort, certain FTX entities paid Defendants to appear in commercials or post about

FTX on social media.  *See id.* ¶¶ 60–69. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████

Plaintiffs allege that they bought "yield-bearing accounts" ("YBAs") from FTX in reliance on "some or all" of Defendants' statements.  AC ¶¶ 8, 27–32, 98.  According to Plaintiffs, Yield Bearing Accounts are "interest-bearing cryptocurrency accounts" that FTX offered to public investors through its exchange.  *Id.* ¶ 53.  In early November 2022, FTX began to collapse as investors called CEO Sam Bankman-Fried's business practices into question.  *Id.* ¶¶ 47–52.  Customers withdrew "an estimated $6 billion" from the exchange in a seventy-two-hour period, *id.* ¶ 49, and FTX's value plummeted, *id.* ¶¶ 49–50.  On November 11, 2022, FTX Trading Ltd. and 101 affiliated debtors (collectively, the "FTX Debtors") commenced bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware by filing petitions for voluntary relief under chapter 11 of title 11 of the U.S. Code.  *Id.* ¶ 50; *see In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.).  A putative class has filed claims for rescission of customer deposits and other relief before the Bankruptcy Court.  *See* Adversary Compl. for Decl. Judgment & Violations of Common Law, *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Dec. 27, 2022), ECF No. 321.

Plaintiffs allege that as part of a fraudulent "scheme employed by the FTX" entities, Defendants made "misrepresentations and omissions" about FTX that Plaintiffs purportedly relied on "to purchase[] the [Yield Bearing Accounts] and/or execute[] trades" on the FTX exchange. AC ¶¶ 21–22, 27–32.  In Count Four of their Amended Complaint, Plaintiffs seek "an order

3

declaring that the YBAs are securities required to be registered with the SEC and state regulatory authorities." *Id.* ¶ 101. They request "an expedited declaratory ruling" to "quickly advance[]" resolution of **global** litigation for FTX customers. *Id.* ¶¶ 3, 36; *see also id.* ¶¶ 7, 12. And they repeatedly allege that the Yield Bearing Accounts "were 'securities' as defined by the United States securities laws and as interpreted by the Supreme Court, the federal courts, and the SEC." *Id.* ¶ 55; *see also id.* ¶¶ 4, 6, 54 (referencing "federal securities laws as construed by the United States Supreme Court . . . and by the SEC").

Plaintiffs' counsel first advanced the same claims against Defendants and others on November 15, 2022, in a putative class action, *Garrison v. Bankman-Fried*, No 1:22-cv-23753-KMM (S.D. Fla.), filed only days after FTX declared bankruptcy. Plaintiffs are unnamed members of the putative *Garrison* classes. *See* Am. Compl. ¶ 234(2), *Garrison*, No 1:22-cv-23753-KMM (S.D. Fla. Dec. 16, 2022), ECF No. 16. Yet Plaintiffs subsequently brought nearly identical claims, on an individual basis, against Defendants in a consolidated action in state court. AC ¶¶ 27–35.[2] Defendants timely waived service on January 17, 24, and 25, 2023, and removed to this Court on February 3, 2023. *See* Waivers of Service, ECF No. 1-3 at 63-65; Notice of Removal ("Notice") ¶¶ 5–7, ECF No. 1. Plaintiffs moved for remand three days later. *See* Mot.

## ARGUMENT

## I.   DEFENDANTS' REMOVAL WAS TIMELY

Plaintiffs' argument (Mot. 9–10) that Defendants did not timely remove this action is not colorable. Removal "within 30 days after [the defendant's] receipt . . . , through service or otherwise," of the pleadings is timely. 28 U.S.C. § 1446(b)(1); *see also* Fed. R. Bankr. P.

---

[2] The procedural history of the duplicative federal and state lawsuits—including Plaintiffs' forum- and judge-shopping by filing (and later dismissing) three nearly identical class actions in this Court and six nearly identical individual lawsuits in state court—is set forth in more detail in Defendants' state-court motion to stay this case in favor of *Garrison*. *See* ECF No. 4-1 at 4–11.

9027(a)(3).  Defendants removed the case on February 3, 2023, only 17 days after Brady waived service on January 17, 2023,[3] and only 10 and 9 days after Ortiz and O'Leary waived service on January 24 and January 25, 2023, respectively.  *See* Waivers of Service, ECF No. 1-3 at 63–65. Removal was therefore well within § 1446(b)(1)'s 30-day window.  *CIC Contrutora, Inc. v. Beccari*, No. 18-60621, 2018 WL 4409854, at *2 (S.D. Fla. July 20, 2018); *see* Fla. R. Civ. P. 1.070(i)(5) ("When the plaintiff files a waiver of service with the court, the action must proceed . . . as if a summons and complaint had been served at the time of filing the waiver[.]").

Plaintiffs contend that removal was untimely because at least Brady and possibly the other Defendants "learned of the complaint" more than 30 days before removal.  Mot. 9.  A unanimous Supreme Court flatly rejected Plaintiffs' argument 24 years ago in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999), holding that "a defendant is not obliged to engage in litigation unless notified of the action, *and* brought under a court's authority, ***by formal process***."  *Id.* at 347 (emphasis added).  The decision leaves no ambiguity: "[A] named defendant's time to remove" is not triggered "by mere receipt of the complaint unattended by any formal service."  *Id.* at 347–48.  This Circuit's decisions are similarly clear.  *See Bailey v. Janssen Pharmaceutica Inc.*, 536 F.3d 1202, 1206 n.7 (11th Cir. 2008) ("[T]he Supreme Court has rejected using simple notice or constructive service to start the clock on [the] § 1446(b) time window."); *Edwards v. Apple Comput., Inc.*, 645 F. App'x 849, 852 (11th Cir. 2016) (citing *Murphy Brothers* and holding defendant who was "never formally served" timely "removed the case . . . two days after waiving service of process").[4]  Plaintiffs' argument to the contrary should be rejected.

---

[3] Plaintiffs admitted in a state-court filing that Brady "executed and returned a Waiver of Service on January 17th."  Pl. Shetty's Mot. for Partial Summ. J. ("SJ Mot.") at 1 n.1, ECF No. 1-4.

[4] The same analysis applies to Fed. R. Bankr. P. 9027(a)(3)'s functionally "identical" 30-day removal clock.  *See Lead I JV, LP v. N. Fork Bank*, 401 B.R. 571, 576 n.5 (E.D.N.Y. 2009).

## II.      THE COURT HAS JURISDICTION UNDER 28 U.S.C. § 1331

Defendants' removal was not only timely, but also well-founded in this Court's federal question jurisdiction. *See* 28 U.S.C. § 1331. Federal courts have "arising under" jurisdiction over state-law claims that turn on interpretation of a substantial federal issue. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312–14 (2005); *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295–96 (11th Cir. 2008). "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable*, 545 U.S. at 314.

Plaintiffs dispute only the first factor of the *Grable* analysis, arguing that their claims arise under state law because they styled them as state-law claims. *See* Mot. 10–13. But, in Count Four, Plaintiffs explicitly and repeatedly seek a declaration establishing affirmative rights under federal law, AC ¶¶ 3–4, 6–7, 12, 36, 54–55, 101, and they could have brought this claim in federal court under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b). That is more than sufficient for § 1331 jurisdiction, and Plaintiffs do not and cannot dispute that the remaining three *Grable* factors are likewise satisfied. Plaintiffs' Motion should be denied on this jurisdictional ground alone.[5]

### A.      Plaintiffs' Count Four Necessarily Raises A Federal Question

"There is no difficulty" finding federal-question jurisdiction over a declaratory action when, as here, the *plaintiff* seeks "to establish that [the] plaintiff has an affirmative federal right." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2767 (4th ed. 2022). So long as the plaintiff "could have brought" the claim "in federal court by a coercive

---

[5] Removal of the entire action is proper so long as one claim is within the Court's jurisdiction. *See* 28 U.S.C. §§ 1367, 1441(c)(1); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165–66 (1997); *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983).

action for damages or an injunction," then jurisdiction lies.  *Id.*; *see also McDougald v. Jenson*, 786 F.2d 1465, 1476 (11th Cir. 1986) (finding jurisdiction over declaratory action where "the court would also have jurisdiction to entertain [the declaratory plaintiff's] claim for injunctive relief"); *see also, e.g.*, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 674 (1950) (evaluating jurisdiction by reference to "the matter in controversy as to which [the plaintiff] asked for a declaratory judgment").

As set forth in the Notice of Removal, *see* Notice ¶¶ 21 & n.3, Count Four necessarily raises a federal question because Plaintiffs seek to establish an affirmative federal right, and Plaintiffs could have brought their request for declaratory relief as a coercive action under Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b).  *See Ledford v. Peeples*, 657 F.3d 1222, 1248 (11th Cir. 2011) (reciting elements of Section 10(b) claim).  Count Four (i) alleges that Plaintiffs each "purchased a YBA" in "justifiable reliance on the Defendants' [statements] regarding the Deceptive FTX Platform" and (ii) expressly seeks a declaration that "the YBAs are securities ***required to be registered with the SEC*** and state regulatory authorities, that the Deceptive FTX Platform did not work as represented, and Defendants were paid exorbitant sums of money to peddle FTX to the nation."  AC ¶¶ 98–101 (emphasis added).  Plaintiffs do not offer— and have therefore waived—any response to Defendants' argument that Count Four on its face presents a claim that could have been brought under Section 10(b).  *See Stern v. First Liberty Ins. Corp.*, 424 F. Supp. 3d 1264, 1271 (S.D. Fla. 2020).  Instead, they insist that their claims arise "under Florida law," pointing to Count One, an alleged violation of state securities law.  Mot. 10. But Defendants have never argued that Count One arises under federal law.

As to Count Four—the cause of action on which Defendants' removal is based—Plaintiffs have little to say.  They point to Count Four's label and argue that its reference to the SEC is

"superfluous" and a mere "scrivener's error." *Id.* But courts "look beyond the labels to the underlying facts of the complaint to evaluate jurisdiction." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1310 (11th Cir. 2020). The facts underlying Count Four show that the reference to the SEC and request for relief under federal law are the crux of the Amended Complaint—and indeed, its very purpose. Plaintiffs are "master[s] of the complaint"; instead of "eschewing claims based on federal law, . . . to have the cause heard in state court," Plaintiffs chose to seek declaratory rulings establishing rights under *federal* law for the stated purpose of expeditiously resolving *global* FTX-related litigation. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (citation omitted) (omission in original); *see* AC ¶¶ 3–4, 6–7, 12, 36, 54–55, 101.[6]

Plaintiffs cannot rely on their additional request for a declaratory ruling under state law to defeat removal, because a state-law declaratory ruling would not resolve Plaintiffs' request for a federal-law declaratory ruling. As Plaintiffs themselves argue, state and federal law have been interpreted to define securities differently, such that a ruling under state law would *not* determine the Yield Bearing Accounts' status under federal law. *See* Mot. 12 (discussing Florida authorities).[7] A ruling premised on state law alone would leave Plaintiffs' request for relief under

---

[6] Plaintiffs have not "identified any state law cause of action which would entitle them to the declaratory relief they seek" of an order holding Yield Bearing Accounts to be securities under federal law. *Coal. for Safe Transit, Inc. v. Bi-State Dev. Agency*, 778 F. Supp. 464, 466–67 (E.D. Mo. 1991) (looking to "the substantive theories underlying plaintiffs' claim for [declaratory] relief" to find jurisdiction). Even if they had, a district court has jurisdiction over a declaratory action where a coercive action "could assert non-frivolous state *and* federal law claims," so long as the potential federal claim is evident on the face of the complaint. *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1254 (11th Cir. 2003).

[7] Further, Plaintiffs admit that they brought their state-court action because they believe the state court can more quickly resolve "whether the SEC was initially correct, in finding that all of these YBAs are (or are not) the sale of 'unregistered securities,'" and then Plaintiffs (or their counsel) can use that ruling to litigate "all of the other pending massive litigation, against other cryptocurrency platforms (such as Voyager)" and "greatly advance litigation across the globe." AC ¶¶ 3, 6. That express goal requires a ruling based on federal law, not state law, and one that Plaintiffs posit would affect not just this litigation, but also the *Voyager* litigation (which has

federal law unresolved; therefore, complete resolution of Count Four "unavoidably involves answering federal questions." *Turbeville v. FINRA*, 874 F.3d 1268, 1275 (11th Cir. 2017).

A district court in this Circuit recognized as much in *Roman v. Hooters Spring Hill, Inc.*, No. 8:16-cv-01332, 2016 WL 8997452 (M.D. Fla. July 8, 2016). *Roman* recognized federal question jurisdiction over a state-court complaint seeking an affirmative declaration of both federal and state law in the guise of a Florida Declaratory Judgment Act cause of action. The plaintiff requested declaratory judgments "affirming that Defendant violated the [Fair Labor Standards Act]," and the Florida Minimum Wage Act. *Id.* at *2. Although the complaint was styled as arising only under state law, the plaintiff's "right to relief" in fact "depend[ed] on the resolution of a substantial question of federal law." *Id.* And because the federal and state statutes were "similar, but not identical," by invoking federal law in her declaratory claim, the plaintiff requested a separate declaration that the court could not simply subsume into her request for a declaration of state law. *Id.* (citation omitted). The same is true here. Plaintiffs explicitly seek a declaration that the Yield Bearing Accounts are securities under federal law, which may diverge from Florida law on this issue. SJ Mot. 10 ("Florida courts are not bound by federal precedent" in interpreting state securities law and "must take into consideration the legislative purpose."). As in *Roman*, then, while Plaintiffs "assert in [their] Counts that [they are] seeking relief pursuant to state law," their pleading "plainly asks the Court to grant . . . relief" under federal law. 2016 WL 8997452, at *2.

Chief Judge Altonaga distinguished *Roman* in *Sanchez v. Rincon Progreseño Corp.*, 447 F. Supp. 3d 1290 (S.D. Fla. 2020), on which Plaintiffs mistakenly rely. *See* Mot. 7, 12. *Sanchez* found no jurisdiction over a removed complaint that raised claims under the Florida Minimum Wage Act, but referred to incorporated federal law standards. 447 F. Supp. 3d at 1291–92. In

nothing to do with Defendants). *Id.* ¶ 6.

9

granting remand, the Court contrasted the *Roman* plaintiff's demand for "declaratory judgments affirming the defendant violated the FLSA"—an apparent request for relief under federal law— with the *Sanchez* plaintiff's complaint, which did not raise a declaratory claim and "unmistakably sought relief only under Florida law," without invoking federal remedies.  *Id.* at 1292–93.[8]

The Amended Complaint unambiguously, and necessarily, raises a federal question on its face.  The first *Grable* factor therefore favors jurisdiction.

### B.      The Remaining *Grable* Factors Likewise Favor Jurisdiction

Plaintiffs do not contest the three remaining *Grable* factors.  *See* Mot. 10–13.  Nor could they, as each supports this Court's jurisdiction: the federal question raised in the Amended Complaint is "actually disputed" and "substantial," and adjudication in this Court would not "disrupt[] the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.

First, the Yield Bearing Accounts' status under federal securities law is actually disputed. Defendants will contest, both here and in *Garrison*, Plaintiffs' entitlement to a declaration that the Yield Bearing Accounts were securities under federal law.  *See Adventure Outdoors*, 552 F.3d at 1298–99; *Meyer v. Health Mgmt. Assocs., Inc.*, 841 F. Supp. 2d 1262, 1268 (S.D. Fla. 2012).

Next, the Yield Bearing Accounts' status is a "substantial" federal question because it is important "to the federal system as a whole," *Gunn*, 568 U.S. at 260, and a ruling on this question may "control many other cases," *MDS (Can.) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013).  Plaintiffs themselves contend that resolution of their declaratory claim "will greatly advance litigation across the country," SJ Mot. 2; *see* AC ¶¶ 6, 11, and the first-filed

---

[8] Plaintiffs' other authorities are no more persuasive.  *See* Mot. 11–12.  *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158 (3d Cir. 2014), *aff'd*, 578 U.S. 374 (2016), did not involve a declaratory claim, and *Mehl v. Office of Financial Regulation*, 859 So. 2d 1260 (Fla. 1st DCA 2003), underscores that, as in *Roman*, Plaintiffs' request for a state-law declaration is distinct from their request for a federal law declaration.

*Garrison* raises nearly identical claims and issues. *See Edwards v. Deloitte & Touche, LLP*, No. 16-21221, 2017 WL 1291994, at *5 (S.D. Fla. Jan. 18, 2017) (multiple "suits in the federal system seeking to determine" the same federal question showed it to be substantial).

Finally, the exercise of federal jurisdiction here would not upset "any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. To the contrary, "the interpretation and application of the federal securities laws" is an "area[] of undisputed strong federal interest." *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 100 (2d Cir. 2001); *see Friedlander v. Troutman, Sanders, Lockerman & Ashmore*, 788 F.2d 1500, 1504 (11th Cir. 1986) ("The comprehensive scheme of statutes and regulations designed to police the securities industry is indicative of a strong federal interest."). The private right of action under Exchange Act Section 10(b), and the Act's exclusive jurisdiction provision, 15 U.S.C. § 78aa(a), are further "evidence" of "Congress's conception of the scope of jurisdiction." *Grable*, 545 U.S. at 318; *see Adventure Outdoors,* 552 F.3d at 1302–03.

In short, all four *Grable* factors support jurisdiction over this action.[9]

## III.   THE COURT HAS JURISDICTION UNDER 28 U.S.C. § 1334, AND THERE IS NO BASIS FOR MANDATORY ABSTENTION

This Court also has "related to" jurisdiction under 28 U.S.C. § 1334 because this action would have a direct and conceivable effect on the FTX bankruptcy estates. An action is "related to" a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on

---

[9] Plaintiffs' alternative request "to amend the complaint" again to excise references to the SEC, Mot. 12 n.9, should be denied. First, amendment would not impact "related to" jurisdiction under § 1334. Second, courts assess jurisdiction over a removed case as of the time of removal. *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002) (district court had jurisdiction over removed case "even after [the plaintiff] amended the complaint to remove any federal cause of action"). Post-removal amendment does not eliminate jurisdiction, "particularly if" it is "the result of gamesmanship." *Young v. Roy's Rest.*, No. 6:06-cv-178, 2006 WL 2024946, at *2 (M.D. Fla. July 17, 2006).

11

the estate being administered in bankruptcy," meaning that "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995) (citation omitted); *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990). The "key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) (citation omitted). Here, there are three independent grounds for "related to" jurisdiction—indemnification rights, overlap in the claims against FTX Debtors and Defendants, and insurance rights—and there is no basis for this Court to abstain.

### A. The FTX Debtors Have A Vested Contractual Obligation To Indemnify And Defend Claims Arising Under This Action

The FTX Debtors are contractually obligated to indemnify and defend Defendants for the conduct alleged in the Amended Complaint, such that this action has a direct and conceivable impact on the FTX bankruptcy estates.

Defendants entered into agreements with certain of the FTX Debtors in consideration for their promotional activities, including FTX Debtors Blockfolio Inc. and West Realm Shires Services Inc. (d/b/a FTX US).[10] ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ █ ███████████████████

---

[10] ████████████████████████████████████████████████████
████████████████████████████████

[11] Plaintiffs also contend that Defendants' Notice of Removal failed to "attach the purported contracts." Mot. 8. But the operative contracts are attached to this Opposition, *see* Exs. B, C, D,

████████████████████████████████████████

████████████████████████████

Further, Defendants' indemnification rights vested upon the filing of this action—they do not depend on the commencement of a separate proceeding to determine FTX's obligations. *See In re LTC Holdings, Inc.*, 587 B.R. 25, 39 (Bankr. D. Del. 2018) (finding "related to" jurisdiction based on a contractual indemnification claim that "ha[d] fully vested" and could "be acted upon at any point during the [action]"); *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 583–84 (D. Del. 2018) (finding "related to" jurisdiction where debtors had "contractual obligations to advance defense costs . . . before any final determination on the merits"). The existence of a self-executing, contractual indemnification obligation supports "related to" jurisdiction over each claim in the Amended Complaint.[12]

### B.  Plaintiffs' Claims Are "Inextricably Intertwined" With The Conduct And Operations Of The FTX Debtors

In addition, Plaintiffs' claims are "inextricably intertwined" with the conduct and operations of the FTX Debtors, and therefore directly implicate the FTX Debtors' rights, options,

---

& E, and Defendants were not required to attach them to the Notice. Bankruptcy Rule 9027—which governs removal under § 1452(a)—only requires "a ***short and plain*** statement of the facts which entitle the party filing the notice to remove." Fed. R. Bankr. P. 9027(a)(1) (emphasis added).

[12] Plaintiffs' cases are inapposite. The *Strobel* defendant removed claims under § 1452(a), arguing that "related to" jurisdiction existed because defendant's bankrupt supplier *may* be obligated to indemnify defendant under various supply agreements. *Strobel v. Colgate-Palmolive Co.*, No. 2:19-cv-00767-MCE-KJN, 2019 WL 2710668, at *1 (E.D. Cal. June 28, 2019). These indemnification claims, however, were "hotly disputed" and likely to be the subject of a separate lawsuit to determine their validity before any actual claim would exist against the estate. *Id.* at *2. *Suarez* is likewise inapplicable. There, defendants removed because a co-defendant sought recognition of its Canadian bankruptcy in a U.S. Bankruptcy Court. *Suarez v. Muscletech Rsch. & Dev., Inc.*, No. 06-cv-20981, 2006 WL 8433564, at *1 (S.D. Fla. May 26, 2006). The Court found that defendant had provided no information about the action's effect on the bankruptcy, and questioned whether there could be any effect without a U.S. estate. *Id.* Here, as noted, Defendants' indemnification rights reflect an actual, accrued liability of the FTX estates under the express terms of the endorsement contracts, the validity of which is undisputed.

and freedom of action, and provide an independent basis for "related to" jurisdiction.

Courts have recognized that an "identity in interest" between debtors and non-debtors provides an independent basis for "related to" jurisdiction where there is overlap in the conduct giving rise to the claims. *See*, *e.g.*, *Int'l Union of Op. Eng'rs Loc. 542 v. Mallinckrodt ARD, Inc.*, No. 21-cv-114, 2021 WL 915722, at *5 (E.D. Pa. Mar. 10, 2021) (finding "related to" jurisdiction over claims against non-bankrupt co-defendants that were "inextricably intertwined" with claims against the bankrupt manufacturer, concluding that plaintiffs could not pursue their claims against co-defendants without impacting the debtor's "rights, liabilities, options, or freedom of action"); *see also Matter of Wood*, 825 F.2d 90, 94 (5th Cir. 1987) ("[W]hen the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.").

Here, FTX, not Defendants, held the funds Plaintiffs deposited into the Yield Bearing Accounts. And FTX, not Defendants, is accused of misappropriating those funds. Because FTX's conduct and operations are at the core of the issues raised in the Amended Complaint, Defendants cannot fully or fairly litigate without impacting the "rights, liabilities, options, or freedom of action" of the FTX Debtors. *Mallinckrodt ARD, Inc.*, 2021 WL 915722, at *5. To offer but one example, Plaintiffs seek a declaration that "the YBA offered and sold to Plaintiffs—the same one offered and sold to millions of other Americans for collectively billions of dollars—constituted an unregistered security." AC ¶ 26. The FTX Debtors have an undeniable interest in the answer to this and other issues disputed here, which may influence determination of the legal status of one of the FTX Debtors' products, as well as the FTX Debtors' future liability for those very same "billions of dollars." *See Kernel Recs. Oy v. Mosley*, No. 09-21597, 2010 WL 2812565, at *16 (S.D. Fla. July 5, 2010) (finding that a permanent injunction resolving the legal status of one

owner's copyright "will obviously permanently affect the rights of the co-owner") (internal quotation omitted); *see also In re Dow Corning Corp.*, 86 F.3d 482, 493–94 (6th Cir. 1996) (finding "related to" jurisdiction over claims against non-debtor manufacturers of silicone implants because "the nature of the claims asserted establishes that [the debtor] and the various nondebtor defendants are closely related with regard to the pending breast implant litigation"). Thus, Plaintiffs' claims directly implicate the rights, interests, and liabilities of the FTX Debtors.

### C.   Existence Of Shared Insurance Further Impacts The FTX Debtors' Estates

As another independent ground for jurisdiction, certain Defendants are entitled to insurance proceeds under policies procured by the FTX Debtors, and any judgment against those Defendants would result in the depletion of shared coverage limits and thus reduce assets that could otherwise be available to the FTX bankruptcy estates.



Through ongoing efforts, Defendants have identified general and excess liability policies procured by FTX Debtor West Realm Shires, Inc., that contain specific endorsements for "Professional Athlete Sponsorships." *See* Exs. F, G.[13]   Under the policies identified thus far, claims of insureds[14] are subject to a combined aggregate limit of $7,000,000, such that the claims of one insured would result in a

---

[13] The primary and excess policies are issued by HDI Global Specialty SE for the period November 20, 2021 to November 20, 2022. *See* Exs. F, G.

[14] "Additional insureds" are defined to include, among other designations, "[a]ny person or organization that you have agreed to include as an additional insured under an insured contract provided such contract was executed prior to the date of loss." Ex. F; ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████

dollar-for-dollar reduction in coverage available for all insureds.  *See* Exs. F, G.  Thus, to the extent those proceeds are property of the FTX Debtors' bankruptcy estates, Defendants' entitlement to proceeds for any costs or judgments arising from this action "poses the specter of direct impact on the *res* of the bankrupt estate."  *In re Quigley Co., Inc.*, 676 F.3d 45, 58 (2d Cir. 2012) (finding "related to" jurisdiction "where litigation of the [lawsuits against non-debtor] would almost certainly result in the drawing down of insurance policies that are part of the bankruptcy estate"). This fact alone is determinative in establishing "related to" jurisdiction.  *See*, *e.g.*, *In re Montreal Maine & Atl. Ry., Ltd.*, No. 1:13-MC-00184-NT, 2014 WL 1155419, at *10 (D. Me. Mar. 21, 2014) ("Given the evidence of shared insurance, the Court finds that the nineteen wrongful death suits, all of which name the [non-debtor defendants] . . . are related to the Railway's bankruptcy.").

**D.    This Court Should Hear This Action—Abstention Is Not Mandatory**

In a single paragraph, Plaintiffs argue that the Court is "compelled to abstain from exercising jurisdiction." Mot. 8–9.  Plaintiffs are wrong.  Abstention under 28 U.S.C. § 1334(c)(2) is mandatory only when the moving party can establish, by a preponderance of the evidence, that (1) a motion to abstain is timely filed; (2) jurisdiction is based *solely* on federal bankruptcy jurisdiction; (3) the underlying claim, although related to a Title 11 case, does not arise under Title 11 or in a Title 11 case; (4) an action has commenced in state court; and (5) the action could be timely adjudicated in that forum.  *In re Antol Restoration, Inc.*, 444 B.R. 481, 485 (Bankr. S.D. Fla. 2011) (citation omitted).  The "mandatory abstention provisions should be narrowly construed and the abstention should be exercised sparingly and cautiously."  *In re Fisher Island Invs., Inc.*, No. 11-17047-AJC, 2014 WL 1343269, at *3 (Bankr. S.D. Fla. Mar. 28, 2014) (citation omitted). Further, "'[t]he party requesting abstention must prove the existence of each element by a preponderance of the evidence.'"  *In re EZ Pay Servs., Inc.*, 390 B.R. 421, 424 (Bankr. M.D. Fla. 2007) (citation omitted).  In other words, "'[a] party is not entitled to mandatory abstention if it

fails to prove any one of the statutory requirements.'" *Id.* (citation omitted).

Plaintiffs have not satisfied any of these requirements, starting with the first: filing a motion to abstain. Beyond that threshold but dispositive failure, as discussed above, this Court has federal question jurisdiction under § 1331—removal is not based *solely* on federal bankruptcy jurisdiction under § 1334(b). Even if Defendants had removed solely under § 1334, mandatory abstention still does not apply because Plaintiffs cannot meet their burden to show that this action can be timely adjudicated in state court. All of the relevant factors weigh against abstention.[15]

### 1. Complexity of the Federal Issues Raised Weigh Against Abstention

As discussed above, the action involves complex questions of federal law that *should* be adjudicated in a federal forum. Plaintiffs' counsel first advanced these claims, only days after FTX declared bankruptcy, in *Garrison*, a first-filed putative class action in this Court, which raises identical claims based on the same facts against Defendants and others. Among the federal issues to be decided in both *Garrison* and this action are whether the Yield Bearing Accounts offered and sold by FTX constitute unregistered securities under federal law. The resolution of these and related questions could affect the broader federal regulatory scheme.

### 2. Status of Proceeding in State Court Weighs Against Abstention

Plaintiffs cannot show that this action can be timely adjudicated in state court because, as discussed *infra* Section IV, if it returns to state court, it will likely be stayed. The *Garrison* action—as the "first-filed" action—encompasses all of the issues raised here, and pleads identical facts and identical causes of action against Defendants. Because *Garrison* will address and resolve every issue in this action, and because the federal court was the first court to obtain and exercise

---

[15] Plaintiffs do not raise any argument that so-called "permissive abstention" is warranted under § 1334(c)(1). They have therefore waived this argument and cannot raise it for the first time in reply. *See Stern*, 424 F. Supp. 3d at 1271.

jurisdiction over this dispute, firmly established principles of comity—and binding state precedent—require that the state court action be stayed.  *See*, *e.g.*, *Roche v. Cyrulnik*, 337 So. 3d 86, 88 (Fla. 3d DCA 2021) ("Generally, when a state lawsuit is filed that involves the same nucleus of facts as a previously filed federal lawsuit, principles of comity and the desire to avoid inconsistent results require the stay of the subsequently filed state action until the prior filed federal action has been adjudicated."); *OPKO Health, Inc. v. Lipsius*, 279 So. 3d 787, 791 (Fla. 3d DCA 2019) ("'Although a trial court has broad discretion to order or refuse a stay of an action pending before it, it is nonetheless an abuse of discretion to refuse to stay a subsequently filed state court action in favor of a previously filed federal action which involves the same parties and the same or substantially similar issues.'") (citation omitted).

Moreover, the Amended Complaint was filed approximately three months ago.  Plaintiffs assert that "discovery has already been served" and "Florida Plaintiff Shetty has already filed a pending Motion for Partial Summary Judgement."  Mot. 1.  Almost immediately after Plaintiffs moved to remand, however, the partial summary judgment motion was denied without prejudice pending disposition of the remand question.  Order, ECF No. 24.  Whether in federal or state court, then, this motion is not ripe for resolution because that denial has already resolved it.  Similarly, Plaintiffs' discovery requests are premature in federal court and were invalid in state court.  *See* Fed. R. Civ. P. 26(d)(1); *see also* Fla. R. Civ. P. 1.340(a), 1.350(b), 1.370(a) (discovery "may be served" on defendants "with or after service of the process and initial pleading").  The state court action thus remains in its infancy.

### 3.    Backlog and Time to Resolution Weigh Against Abstention

Plaintiffs' threadbare arguments as to why this action can be timely adjudicated in state court also do not carry the day.  Plaintiffs contend that the Complex Business Division of the Eleventh Judicial Circuit "was specifically created to efficiently manage and adjudicate complex

commercial cases." Mot. 9. This general description of the Complex Business Division's aims fails to satisfy Plaintiffs' burden. *See Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 13–14 (S.D.N.Y. 2002) (finding burden not met despite movants' contention that the case would be "expeditiously" resolved because it was filed in a court division "which handles only complex commercial matters and is intended to provide 'efficient, expeditious, sound and inexpensive adjudication of such cases'"). Plaintiffs cite an article featuring Judge Hanzman's efficient handling of an unrelated case, Mot. 9, but those efforts, while commendable, say nothing about the case load of judges in the Eleventh Judicial Circuit versus this Court. Indeed, between October 1, 2021, and September 30, 2022, 23,475 cases were assigned to 23 judges (a case load of 1,020 cases per judge) in the Eleventh Judicial Circuit, whereas only 10,545 cases were assigned to 18 judges (a case load of 586 cases per judge) in the Southern District of Florida.[16],[17]

## IV. ALTERNATIVELY, THE COURT SHOULD EXERCISE ITS DISCRETION TO STAY THIS ACTION

Alternatively, this Court may—and should—deny or defer adjudication of Plaintiffs' Motion to Remand on the grounds that this case should be stayed in favor of the first-filed *Garrison* action. A district court may "stay or dismiss a suit that is duplicative of another case then pending

---

[16] *Compare* Federal Court Management Statistics, September 2022: Comparison of Districts Within the Eleventh Circuit – 12 Month Period Ending September 30, 2022, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2022.pdf, *with* Off. of State Ct. Adm'r, Fla. Cts., *Statistical Reference Guide to Florida's Trial Courts (2023)*, https://www.flcourts.gov/content/download/858890/file/2021-22-srg-chapter-2-overallstatistics-20230127.pdf.

[17] The Court also should reject Plaintiffs' baseless request for fees and costs under 28 U.S.C. § 1447(c). Mot. 13–14. Such sanctions are appropriate only when removal is "improvident or unreasonable." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (internal quotation marks omitted); *see Sanchez*, 447 F. Supp. 3d at 1293 (denying fees and costs where removal predicated on complaint's "invocation of" federal law). The federal questions in the Amended Complaint and the relationship between this action and FTX's bankruptcy show Defendants' removal to be well-founded in § 1331 and § 1334.

in federal court." *Greene v. H&R Block E. Enters., Inc.*, 727 F. Supp. 2d 1363, 1367 (S.D. Fla. 2010) (citation omitted). And because a stay under the first-filed rule "is not a determination of the merits, the Court need not establish that it has subject matter jurisdiction . . . before proceeding to consider whether the first filed rule should be applied[.]" *Burgess v. Universal City Dev. Partners, Ltd.*, No. 6:19-cv-2156, 2020 WL 7251382, at *1 n.1 (M.D. Fla. Apr. 30, 2020) (citation omitted); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] district court declining to adjudicate state-law claims on discretionary grounds need not first determine" its jurisdiction. (citation omitted)); *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999) (affirming district court's refusal "to apply a jurisdictional requirement to the first-to-file rule").

Applying these principles, if the Court determines that the questions of jurisdiction are complex, then "considerations of convenience, fairness, and judicial economy" warrant a stay and administrative closure of this action in favor of *Garrison* without resolving the jurisdictional questions. *Sinochem*, 549 U.S. at 432. This is a "textbook case" for resolution on the threshold first-filed ground before reaching the complex question of subject matter jurisdiction—including bankruptcy jurisdiction. *Id.* at 435. This case and *Garrison* assert identical claims against these Defendants and others, and Plaintiffs, as non-party putative class members in *Garrison*, can obtain complete relief through that action. Courts routinely grant stays before deciding remand in such circumstances. *See Marietta Drapery & Window Coverings Co. v. N. River Ins. Co.*, 486 F. Supp. 2d 1366, 1368 n.2 (N.D. Ga. 2007); *Mun. Gas Auth. v. Town of Smyrna*, No. 1:11-cv-2476, 2012 WL 1038649, at *3 (N.D. Ga. Mar. 27, 2012).

## CONCLUSION

For these reasons, Plaintiffs' Motion to Remand should be denied.

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), Defendants respectfully request that the Court hear oral argument on Plaintiffs' Motion to Remand because the jurisdictional issues raised in this case are relatively uncommon.  Defendants believe oral argument would further the Court's understanding of the grounds for removal under both 28 U.S.C. § 1331, as to federal question jurisdiction, and 28 U.S.C. § 1334, as to bankruptcy "related to" jurisdiction.  Defendants submit that thirty minutes per side is sufficient for the parties to argue the issues presented.

Dated:  March 7, 2023               Respectfully submitted,

**COLSON HICKS EIDSON, P.A.**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444

By: */s/ Roberto Martinez*
    Roberto Martínez
    Florida Bar No. 305596
    bob@colson.com
    Stephanie A. Casey
    Florida Bar No. 97483
    scasey@colson.com
    Zachary Lipshultz
    Florida Bar No. 123594
    zach@colson.com

**LATHAM & WATKINS LLP**
    Andrew B. Clubok (*pro hac vice*)
     *andrew.clubok@lw.com*
    Susan E. Engel (*pro hac vice*)
     *susan.engel@lw.com*
    Brittany M.J. Record (*pro hac vice*)
     *brittany.record@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200
Fax: +1.202.637.2201

**LATHAM & WATKINS LLP**
    Marvin S. Putnam (*pro hac vice*)
     *marvin.putnam@lw.com*
    Jessica Stebbins Bina (*pro hac vice*)
     *jessica.stebbinsbina@lw.com*
    Elizabeth A. Greenman (*pro hac vice*)
     *elizabeth.greenman@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, California 90067
Tel: +1.424.653.5500
Fax:  +1.424.653.5501

**LATHAM & WATKINS LLP**
    Michele D. Johnson (*pro hac vice*)
     *michele.johnson@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626-1925
Tel: +1.714.540.1235
Fax: +1.714.755.8290

*Attorneys for Defendant Thomas Brady*

**AKERMAN LLP**
350 East Las Olas Boulevard – Suite 1600
Ft. Lauderdale, FL 33301
Tel.: 954-463-2700
Fax: 954-468-2454

By: */s/ Christopher S. Carver*
    Christopher S. Carver, Esq.
    Florida Bar No. 993580
    christopher.carver@akerman.com
    cary.gonzalez@akerman.com
    Jason S. Oletsky, Esq.
    Florida Bar No. 9301
    jason.oletsky@akerman.com
    jill.parnes@akerman.com
    Katherine A Johnson, Esq.
    Florida Bar No. 1040357
    katie.johnson@akerman.com
    joyce.gutierrez@akerman.com

*Attorneys for Defendant David Ortiz*

**MARCUS NEIMAN RASHBAUM
& PINEIRO LLP**
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, Florida 33394
Tel: (954) 462-1200

2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131
Tel: (305)-400-4260

By: */s/ Jeffrey Neiman*
    Jeffrey Neiman
    jneiman@mnrlawfirm.com
    Fla Bar. No. 544469
    Jeffrey Marcus
    jmarcus@mnrlawfirm.com
    Fla. Bar No. 310890
    Michael Pineiro
    mpineiro@mnrlawfirm.com
    Fla. Bar No. 041897
    Brandon Floch
    bfloch@mnrlawfirm.com
    Fla. Bar No. 125218

**BERK BRETTLER LLP**
9119 Sunset Boulevard
West Hollywood, CA 90069
Tel.: (310) 278-2111
Andrew B. Brettler (*pro hac vice*)
abrettler@berkbrettler.com

*Attorneys for Defendant Kevin O'Leary*

23