**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:23-cv-20439-KMM

MICHAEL NORRIS, *et al.*,

    Plaintiffs,

v.

THOMAS BRADY, *et al.*,

    Defendants.

_____/

**ORDER**

THIS CAUSE came before the Court upon Plaintiffs Michael Norris, Brandon Rowan, Michael Livieratos, Shengyun Huang, Vijeth Shetty, and Bo Yang's (collectively, "Plaintiffs") Motion to Remand. ("Mot.") (ECF No. 22). Defendants Thomas Brady ("Defendant Brady"), David Ortiz, and Kevin O'Leary (collectively, "Defendants") filed a response in opposition, ("Resp.") (ECF No. 37). And Plaintiffs filed a reply ("Reply") (ECF No. 42). The Motion is now ripe for review. As discussed below, the Motion is DENIED.

**I.    BACKGROUND**

Plaintiffs filed this action in state court seeking to hold Defendants responsible for losses resulting from the collapse of the FTX cryptocurrency exchange. *See generally*, Amended Complaint ("Am. Compl.") (ECF No. 1–2). Plaintiffs allege that the Defendants each promoted, assisted in, and actively participated in the offer and sale of unregistered securities in the form of identical Yield-Bearing Accounts ("YBAs") through their involvement with FTX Trading Ltd. d/b/a FTX and West Realm Shires Services Inc. d/b/a FTX US. *Id.* at 1. The Amended Complaint asserts four claims against each Defendant. *Id.* Each claim is styled as requesting relief under Florida state law. *Id.*

On November 11, 2022, FTX Trading Ltd. and 101 individual affiliated debtors (collectively, the "FTX Debtors") commenced bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Delaware by filing petitions for voluntary relief under Chapter 11 of the U.S. Code. *Id*. ¶ 50; *see In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del.).

Defendants filed their Notice of Removal ("Notice") (ECF No. 1) on February 3, 2023, asserting subject matter jurisdiction under 28 U.S.C. § 1331. According to Defendants, Count Four of Plaintiffs' state-court Complaint presents a federal question, thereby invoking federal question jurisdiction. Notice ¶¶ 20–26. Defendants also assert subject matter jurisdiction under 28 U.S.C. § 1334 because this is a civil proceeding "arising in or related to" a case under the Bankruptcy Code. *Id*. ¶¶ 15–19.

Now, Plaintiffs request that this Court remand this action back to state court.

## II. LEGAL STANDARD

The statute governing removal, 28 U.S.C. § 1441, permits a defendant to remove a case brought in state court to federal court if the federal court has subject matter jurisdiction over the action. *See* § 1441. The removing party bears the burden of proving that federal subject matter jurisdiction exists. *See Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1314 (11th Cir. 2002). A district court is required to "'strictly construe the right to remove' and apply a general 'presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (citation omitted). Indeed, "[a] presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." *Id*.

### III. DISCUSSION

Plaintiffs argue this case was improperly removed because: (1) there is no federal question jurisdiction under § 1331, as the Amended Complaint only alleges causes of action pursuant to state law, *see* Mot. at 10–13; (2) Defendant Brady's Notice of Removal was not timely filed, *see id*. at 9–10; and (3) Plaintiffs' claims do not arise out of or relate to bankruptcy proceedings, *id*. at 7–9. Plaintiffs also request attorneys' fees and costs under 28 U.S.C. § 1447(c) on the grounds that there was no objectively reasonable basis for removal. *Id*. at 13–14. The Court addresses each argument, as well as Defendants' responses, in turn.

**1. Federal Question Jurisdiction Exists**

Plaintiffs seek to remand this case to state court on the grounds that that this action sets forth "four clear claims under Florida law," which rise or fall on the question of whether YBAs are securities under state—not federal—law. Mot. at 10. Thus, Plaintiffs argue there is no federal question jurisdiction under § 1331. *See id*. Defendants contend, however, that Count Four of the Complaint, while styled as a state law claim, presents a federal question giving rise to federal question jurisdiction.

Count Four of the Complaint requests a declaratory judgment pursuant to the Declaratory Judgment Act, Florida Statutes §§ 86.011 *et seq*. Compl. ¶¶ 94–101. Therein, Plaintiffs "seek an order declaring that the YBAs are ***securities to be registered with the SEC*** and state regulatory authorities . . ." *Id*. ¶ 101 (emphasis added). While Plaintiffs seek a declaration under state law, Defendants argue that Plaintiffs seek to establish an affirmative federal right—that the YBAs are securities to be registered with the SEC—which gives rise to federal question jurisdiction.

The Supreme Court has set out a circumscribed doctrine that allows a federal court, in certain cases, to hear a state-law claim even if it does not arise under federal law because the claim

"implicate[s] significant federal issues" and thereby federal-question jurisdiction will exist. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (holding federal question jurisdiction exists over a state quiet title action when the underlying claim turned on the adequacy of the IRS's notice to plaintiff about a tax delinquency before selling the disputed property). The Court held that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 315). "The mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction," and such jurisdiction will only lie in a very "narrow" category of cases that "necessarily rest" on a "substantial federal question." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Accordingly, the Court considers the four *Grable* factors in determining whether it has federal jurisdiction over Plaintiffs' state-law claim.

    *A. Necessarily Raised*

Under the first *Grable* factor, Defendants contend that Count Four of the Complaint "necessarily raises a federal question because Plaintiffs seek to establish an affirmative federal right." Resp. at 7 (citing *Ledford v. Peeples*, 657 F.3d 1222, 1248 (11th Cir. 2011)). Defendants specifically argue that Plaintiffs' request for a declaration that the YBAs are securities to be registered with the SEC raises a federal question. *Id*.

Plaintiffs claim that "[t]he addition of such words are entirely superfluous in the context of the claims Plaintiffs assert, and as such amount to no more than a simple scrivener's errors." Mot. at 10. Plaintiffs further "disavow any intent to seek relief under federal law and are prepared to

amend their Complaint to strike the SEC reference." Reply at 3. To date, however, Plaintiffs have not moved to amend their Complaint.

At the outset, the Court notes that Plaintiffs' request for a declaration that the YBAs are securities to be registered with the SEC is neither a scrivener's error nor is it superfluous. A scrivener's error is defined as a "clerical error," which is "[a]n error resulting from a minor mistake or inadvertence . . . ; esp., a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading." BLACK'S LAW DICTIONARY, "Error" (11th ed. 2019). Examples include "omitting an appendix from a document; typing an incorrect number; mistranscribing or omitting and obviously needed word; and failing to log a call." *Id*. Here it cannot be said that Plaintiffs made a minor mistake or mistranscription; rather, they made a substantive, affirmative request for relief. How is the Court to know which of Plaintiffs' other requests for relief are not scriveners' errors? Are Plaintiffs other requests for relief also superfluous? This oversight cannot be fairly characterized as a scrivener's error, and the Court will not erroneously interpret it as such at Plaintiffs' request.

In any event, the Court agrees with Defendants. When a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief depends on the resolution of a substantial question of federal law, federal question jurisdiction exists. *Roman v. Hooters Spring Hill, Inc.*, No. 8:16-CV-01332, 2016 WL 8997452, at *2 (M.D. Fla. July 8, 2016) (holding that federal question jurisdiction existed where, although the Complaint sought relief pursuant to state law, the plaintiff requested a declaration that the defendant violated the Fair Labor Standards Act, which required the Court to interpret the federal statute). Here, Plaintiffs plainly ask the Court to determine whether the YBAs are securities required to be registered with the SEC, a question whose answer depends on the resolution of a substantial

question of federal law.  Compl. ¶ 101.  If Plaintiffs wanted to seek relief under only Florida law, they, as the masters of the Complaint, could have eschewed pursuing relief under federal law.  They did not.  Accordingly, the Court finds that the Complaint necessarily raises a federal question, satisfying the first *Grable* factor.

   *B. Actually Disputed*

Second, the federal issue must be "actually disputed."  *Grable*, 545 U.S. at 314.  This factor is satisfied because the Parties dispute whether the YBAs are securities under federal law.  Mot. at 1; Resp. at 10.  Accordingly, the Court dispenses with further analysis and proceeds to the next *Grable* factor.

   *C. Substantiality*

Third, the federal claim must be "substantial."  *Grable*, 545 U.S. at 314.  The significance of a federal issue to the parties in the suit "is not enough."  *Gunn*, 568 U.S. at 260.  "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."  *Id*.  Without a hard-and-fast framework, the Supreme Court has identified several factors to help in this analysis.  *MDS (Can.) Inc. v. Rad Source Techs, Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)).  These guideposts are more likely to make a federal question substantial: (1) pure questions of law; (2) questions that will control in other cases; and (3) questions in which the government has a strong interest to litigate in federal court.  *Id*.

Plaintiffs do not dispute that Defendants' argument on the issue of whether the YBAs are securities required to be registered with the SEC is purely a legal question.

However, Plaintiffs dispute Defendants' claim that the federal question will control in other cases.  Reply at 4.  Plaintiffs argue that the "state court's determination of Florida law is not

6

controlling in the federal system and, if the state court opines on federal law, federal courts would not be bound by the state court's interpretation of federal law." Reply at 4 (internal quotation marks and citations omitted).

Plaintiffs misunderstand *Grable's* substantiality factor. As the Court explained in *Grable*, the federal issue must be substantial, "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." 545 U.S. at 314. In *Empire*, the Court continued, "*Grable* presented a nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'" 547 U.S. 677, 700 (2006) (citing Hart and Wechsler 65 (2005 Supp.)). The advantages thought to be inherent in a federal forum include uniformity—that the decision in the *federal* forum will govern multiple cases. As Plaintiffs point out, the state forum lacks the benefit of uniformity. The question is whether a decision of this Court, not the state court, would settle the issue once and for all and thereafter govern numerous cases. *Id*.

Here, there are several suits currently in the federal system, all seeking to determine whether the YBAs are securities required to be registered with the SEC. *See e.g.*, *Garrison v. Bankman-Fried et al.*, 1:22-cv-23753-KMM (S.D. Fla) (filed Nov. 15, 2022) (seeking "an order declaring that the YBAs were securities required to be registered with the SEC"); *Lam v. Bankman-Fried et al.*, 3:22-cv-07336-JSC (N.D. Cal.) (filed Nov. 20, 2022) (seeking "an order declaring that the YBAs were unregistered securities and needed to be registered with the SEC"). A Court in this district has held that multiple "suits in the federal system seeking to determine" an answer to the same federal question showed the federal claim to be substantial. *See e.g.*, *Edwards v. Deloitte & Touche, LLP*, No. 16-cv-21221, 2017 WL 1291994, at *5 (S.D. Fla. Jan. 18, 2017).

Because the federal question here will provide an answer that will control in other cases, and the question is purely a question of law, Defendants satisfy the substantiality factor.

*D. Federal-State Balance*

Lastly, the Court considers if deciding this issue in a federal forum would "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The Court sees no detrimental effect on the state-federal division of judicial labor. Plaintiffs argue that "[i]f references to the SEC or federal law in a complaint justified removal, it would effectively enact a wholly unintended federal preemption on state securities claims." Reply at 5. Not so. The Complaint does not merely reference the SEC. It seeks to establish an affirmative federal right—that the YBAs are securities to be registered with the SEC. Am. Compl. ¶ 101. Having a federal court decide this issue would not enact a wholly unintended federal preemption on state securities claims; it would instead permit a federal court to decide the federal issue Plaintiffs themselves raised. This will not "disturb[ ] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

In sum, the Court finds that, considering the *Grable* factors, this Court has federal question jurisdiction over Count Four of the Complaint. And, removal of the entire action is proper because at least one claim is within the Court's jurisdiction. *See* 28 U.S.C. §§ 1367, 1441(c)(1); *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 165–66 (1997).

**2. Removal was Timely**

Plaintiffs contend that Defendant Brady's Notice of Removal was untimely filed. Mot. at 9. Although Plaintiffs formally served Defendant Brady with a copy of the lawsuit on December 27, 2022, Plaintiffs allege that Defendant Brady had notice of this action as early as December 5,

8

2022. *Id*. Plaintiffs allege that Defendant Brady removed this action more than thirty days after he "had notice," albeit informal notice, of this action, and therefore the removal was untimely. *Id*.

Plaintiffs are incorrect. The Supreme Court rejected Plaintiffs' very argument twenty-four years ago in *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, holding that "a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal service." 526 U.S. 344, 348 (1999). The Court continued, "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, ***but not by mere receipt of the complaint unattended by any formal service***." *Id*. (emphasis added). Because Defendant Brady removed this action within thirty days of being served, removal was timely.

### 3. The Case Arises Out of or Relates To a Bankruptcy Proceeding

Plaintiffs argue that removal was improper because this case does not arise out of or relate to bankruptcy proceedings. Mot. at 7–10.

Federal courts have original but not exclusive jurisdiction "of all civil proceedings . . . arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Eleventh Circuit in *Matter of Lemco Gypsum, Inc.*, joined other circuits in adopting a test for determining whether a civil proceeding is related to bankruptcy. 910 F.2d 784 (11th Cir. 1990). Specifically, to determine whether a civil proceeding is related to bankruptcy, thereby giving rise to federal jurisdiction, a court considers whether "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the

9

debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id*. at 788.

Defendants argue there are three independent grounds for "related to" jurisdiction—indemnification rights, overlap in the claims against FTX Debtors and Defendants, and insurance rights. Resp. at 12.[1] Defendants further argue that there is no basis for this Court to abstain. *Id*.

Regarding indemnification rights, Defendants argue that the FTX Debtors are "contractually obligated to indemnify and defend Defendants for the conduct alleged in the Amended Complaint, such that this action has a direct and conceivable impact on the FTX bankruptcy estate," giving rise to § 1334 jurisdiction. Resp. at 12. Defendants further argue that their indemnification rights vested upon the filing of this action and the existence of a self-executing contractual obligation supports "related to" jurisdiction. *Id*. at 13. Defendants cite two cases to support this argument: *In re LTC Holdings, Inc.*, 587 B.R. 25, 39 (Bankr. D. Del. 2018) (finding "related to" jurisdiction based on a contractual indemnification claim that "ha[d] fully vested" and could "be acted upon at any point during the [action]"), and, *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 583–84 (D. Del. 2018) (finding "related to" jurisdiction where debtors had "contractual obligations to advance defense costs . . . before any final determination on the merits"). *Id*.

Plaintiffs contend, however, that these two cases are distinguishable. Reply at 6. They argue that the cases Defendants rely on involved "self-executing 'dut[ies] to defend' in an indemnification provision requiring the indemnitor's immediate advancement of defense costs for claims brought against the indemnitee, regardless of merit or their coverage under the scope of the

---

[1] As discussed below, the Court agrees with Defendants' argument that the indemnification rights give rise to "related to" jurisdiction, and the Court therefore declines to address Defendants' remaining arguments.

10

agreement." Reply at 6. Plaintiffs contend that, as here, courts refuse to infer a self-executing duty where that language is absent, and the provision merely provides a general duty to defend and indemnify. *Id.*

A court does not necessarily have "related to" jurisdiction over an action involving a non-debtor party seeking indemnification from a bankruptcy debtor. *See In re W.R. Grace & Co.*, 412 B.R. 657, 667 (D. Del. 2009). Even with an indemnification agreement, a court lacks "related to" jurisdiction if the non-debtor's recovery is predicated upon the results of a subsequent action for indemnification. *Id.* In determining whether "related to" jurisdiction exists, the Court asks two questions: "(1) does the action against the party seeking indemnification automatically result in debtor's liability for indemnification; and (2) is a subsequent lawsuit against the debtor required prior to a determination of indemnification? If the answer to the first question is 'yes' or to the second 'no,' then automatic indemnification creates 'related to' jurisdiction." *Id.* (citing *Steel Workers Pension Trust v. Citigroup, Inc. et al.*, 295 B.R. 747, 753 (E.D. Pa. 2003)).

The Court in *In re W.R. Grace* provided examples of cases where indemnification arose independent of any additional legal actions, and accordingly were "related to" a bankruptcy proceeding. *Id.* (citing *Royal Indem. Co. v. Admiral Ins. Co. Inc.*, No. 07-cv-2048, 2007 WL 4171649, *3 (D.N.J. Nov. 19, 2007) (automatic indemnification in contract providing that a debtor "shall indemnify and hold harmless" the defendant); *Toth v. Bodyonics, Ltd.*, No. 06-cv-1617, 2007 WL 792172, *1 (E.D. Pa. Mar. 15, 2007) (automatic indemnification in contract providing "[t]he Seller agrees to indemnify the Buyer from and against all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the products or any litigation based thereon . . . ."); *Abrams v. Gen. Nutrition Co., Inc.*, No. 06-cv-1820, 2006 WL 2739642, *3 (D.N.J. Sept. 25, 2006) (automatic indemnification in contract providing "[t]he Seller agrees to

11

indemnify the Buyer from and against all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the products or any litigation based thereon . . . ."); *In re Allegheny Health, Educ. and Rsch. Found.*, 383 F.3d 169, 169, 176 n.7 (finding that "related to" jurisdiction existed as the indemnification claim had matured).

The Court also provided examples where indemnification did not arise independent of any additional legal actions, and accordingly was not "related to" a bankruptcy proceeding. *Id*. For example, in *In re Pittsburgh Brewing Co., Inc.*, the indemnification provision was contingent on whether "the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation." *See* No. 06-2077-MBM, 2006 WL 1666210, at *2 (Bankr. W.D. Pa. June 9, 2006). The Bankruptcy Court held that contractual indemnification rights did not give rise to federal jurisdiction where there was only qualified, not absolute, indemnification. *Id*.

In the contracts at issue here,[2] the FTX Debtors  The contracts clearly provide for indemnification for Defendants' claims in this case. And, no interim lawsuit is necessary for the bankruptcy estate to be effected because indemnification is not qualified. Because this case could

---

[2]  The Court previously granted Defendants' Motion to Seal, which requested the Court seal, among other things, the contracts at issue due to the presence of confidential information. ECF No. 39. Accordingly, the Court redacts quoted portions of those contracts which Defendants deem confidential.

impact the liabilities of the bankruptcy estate, it is related to the bankruptcy case within the meaning of § 1334(b), and federal subject matter exists. *Lemco Gypsum*, 910 F.2d at 784.

Plaintiffs argue that Defendants have not notified the FTX Debtors of the "supposed indemnification claims or filed proofs of claim." Reply at 6. Plaintiffs argue that this defeats "related to jurisdiction." Plaintiffs rely on case law where a court found "no 'related to' jurisdiction where indemnitee did not timely file proofs of claim in indemnitors' bankruptcy." *Id*. (citing *Allstate Ins. Co. v. Credit Suisse Secs. (USA)*, No. 11-cv-2232, 2011 WL 4965150, at *5 (S.D.N.Y. Oct. 19, 2011)). While Plaintiffs allege that Defendants have not *yet* notified the FTX Debtors of the indemnification claims, Plaintiffs do not allege that Defendants are out of time to do so. And, because there is currently no deadline in the FTX Bankruptcy litigation to file claims, Defendants may still file a claim. Accordingly, Defendants have not failed to timely file proofs of claims in the bankruptcy proceeding.

Plaintiffs argue that if Court finds "related to" jurisdiction, it is "compelled to abstain from exercising jurisdiction." Mot. at 8–9. 28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Because the Court finds that it has federal question jurisdiction under § 1331, as discussed *supra*, removal here is not solely based on federal bankruptcy jurisdiction. And abstention is therefore not required.

13

Lastly, Plaintiffs request attorneys' fees and costs under 28 U.S.C. § 1447(c) on the basis that there was no objectively reasonable basis for removal. Mot. at 13–14. Because the Court finds that removal was proper, the Court denies Plaintiffs' request for attorneys' fees.

## IV.     CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Plaintiffs' Motion to Remand to State Court (ECF No. 8) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this  4th   day of April, 2023.

*[signature: K. M. Moore]*

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

14